13 CV 2017 (LAP)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT PLUMA,

Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal entity, et al.,

Defendants,

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

***ZACHARY CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel Andrew J. Lucas; Joy Anakhu*
*Tel:  (212) 356-2373*
*Matter No. 2013-011293*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................II

TABLE OF AUTHORITIES ..........................................................................................II

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...............................................................................................1

RULE 12(B)(6) STANDARD FOR DISMISSAL ...........................................................3

PLAINTIFF'S EXCESSIVE FORCE CLAIM MUST BE DISMISSED AND THE
INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.......................3

PLAINTIFF'S FAILURE TO INTERVENE CLAIM MUST BE DISMISSED AND THE
INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.....................9

PLAINTIFF'S 14TH AMENDMEND CLAIM MUST BE DISMISSED AND THE
INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY....................11

PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED ................................................13

      **A.    PLAINTIFFS' ASSAULT AND BATTERY
      CLAIMS MUST BE DISMISSED**....................................................13

      **B.    PLAINTIFFS' STATE CONSTITUTIONAL
      CLAIMS FAIL**......................................................................14

      **C.    PLAINTIFF'S NEGLIGENCE CLAIM FAILS**..................................15

      **D.    PLAINTIFFS' NEGLIGENT RETENTION,
      HIRING, TRAINING AND SUPERVISION CLAIMS
      MUST BE DISMISSED**.......................................................16

ALL OF PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1) AS THE STATUTE
OF LIMITATIONS HAS RUN AND THE ADDITION OF THESE DEFENDANTS
DOES NOT RELATE BACK ..........................................................................17

PLAINTIFF'S PLEADINGS MUST BE STRUCK PURSUANT TO FED. R. CIV. P.
12(F)...................................................................................19

CONCLUSION..............................................................................20

# TABLE OF AUTHORITIES

## CASES

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................................ 13

*Ali v. Szabo*, 81 F. Supp. 2d 447 (S.D.N.Y. 1999) ........................................................ 15

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) ........................................................ 10

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004) ..................... 10

*Barrow v. Wethersfield Police Dep't.*, 66 F.3d 466 (2d Cir. 1995) .................................. 22

*Bernard v. United States*, 25 F. 3d 98 (2d Cir. 1994) ................................................ 18

*Brower v. County of Inyo*, 489 U.S. 593 (1989) ........................................................ 4

*Busch v. City of New York*, 2003 U.S. Dist. LEXIS 27571 (E.D.N.Y 2003) ........................... 18

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ......................................... 3

*Clayton v. City of Poughkeepsie*, 2007 U.S. Dist. LEXIS 55082 (S.D.N.Y.2007) ...................... 18

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) .................................................. 13

*Daniels v. Williams*, 474 U.S. 327 (1986) ............................................................ 14

*Dewitt v. Home Depot U.S.A., Inc.*, 2012 Dist. LEIXIS 130963 (E.D.N.Y. 2012) ...................... 19

*Dumont v. Litton Loan*, 2014 U.S.Dist. LEXIS 26880 (S.D.N.Y. 2014) .................................. 3

*Esmilla v. Cosmopolitan Club*, 2011 U.S. Dist. Lexis 23784 (S.D.N.Y. 2011) ....................... 21

*Estate of Yankel Rosenbaum*, 982 F. Supp. 894 (E.D.N.Y. 1997) ..................................... 16

*Garcia v. Doe*, 779 F.3d 84 (2d Cir. 2015) ......................................................... 3, 8

*Graham v. Connor*, 490 U.S. 386 (1989) ............................................................. 4, 12

*Griffin v. City of New York*, 67 A.D.3d 550 (1st Dep't 2009) ..................................... 20

*Gunn v. Minton*, 133 S. Ct. 1059 (2013) ............................................................. 20

*Hemphill v. Schott*, 141 F.3d 412 (2d Cir. 1998) ................................................... 14

*Hickey v. City of New York*, 2004 U.S. Dist. Lexis 23941 (S.D.N.Y. 2004) ......................... 4, 14

*Housing Works. Inc., v. Turner*, 179 F. Supp. 2d 177 (S.D.N.Y. 2001) ............................. 17

*Hunter v. Bryant*, 502 U.S. 224 (1991) ............................................................... 8

*In Re Parmelat*, 377 F.Supp.2d 390 (S.D.N.Y 2005) .................................................... 4

*Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) .................................................... 14

*Karoon v. New York City Transit Auth.*, 241 A.D.2d 323 (1st Dep't 1997) .......................... 19

**Cases**                                                                                     **Pages**

Koplyay v. Cirrus Logic, 2013 U.S. Dist. LEXIS 171109 (S.D.N.Y. 2013) ................................. 3

Krupski v. Costa Crociere S. p. A., 130 S. Ct. 2485 (2010) ........................................... 22

Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) .............................................. 8

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000) .................................... 20

Martinez v. Sanders, 2004 U.S. Dist. LEXIS 10060 (S.D.N.Y. 2004) ........................ 17

Maxwell v. City of New York, 380 F.3d 106 (2d Cir. 2004) ...................................... 4

Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) ............................................ 13

Noonan v. City of New York, 2015 U.S. Dist. LEXIS 83451 (S.D.N.Y. 2015) ......................... 17

O'Neil v. Krzeminski, 839 F. 2d 9 (2d Cir. 1987) ....................................... 18

Owens v. Okure, 488 U.S. 235 (U.S. 1989) ............................................ 21

Palmer v. Stuart, 274 Fed. Appx. 58 (2d Cir. 2009) ...................................... 22

Pierre-Antoine v. City of New York, 2006 U.S. Dist. LEXIS 28963 (S.D.N.Y. 2006) .............. 16

Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. 2015) ................ 12, 14, 17

Plumhoff v. Rickard, 134 S. Ct. 2012 (2014) .......................................... 10

Rochester v. Sixth Precinct Police Station, 2010 U.S. App. Lexis 6127 (2d Cir. 2010) .............. 21

Rochin v. California, 342 U.S. 165 (1952) ............................................ 14

Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988) ........................................ 24

San Leandro v. Phillip Morris, 75 F.3d 801 (2d Cir. 1996) .................................... 3

Smith v. St. Luke's Roosevelt Hosp., 2009 U.S. Dist. LEXIS 69995 (S.D.N.Y. 2009) .............. 20

Stephenson v. Doe, 332 F.3d 68 (2d Cir. 2003) ........................................... 8

Tatum v. City of New York, 2009 U.S. Dist. LEXIS 3512 (S.D.N.Y 2009) ...................... 15, 18

Villa v. City of New York, 2013 U.S. Dist. LEXIS 49830 (S.D.N.Y. 2013) ............................ 8

Wynder v. McMahon, 360 F.3d 73 (2d Cir. 2004) ........................................ 24

Zahrey v. City of New York, 2009 U.S. Dist. LEXIS 8177 (S.D.N.Y. 2009) ........................... 13

## STATUTES

42 U.S.C. § 1983 ................................................................. 1

Fed. R. Civ. P. 12(b)(1) ........................................................... 1

Fed. R. Civ. P. 12(b)(6) ........................................................... 1

Fed. R. Civ. P. 12(f) ........................................................... 1, 24

**Cases**                                                                                          **Pages**

Fed. R. Civ. P. 15(c) ........................................................................................... 21, 22

## PRELIMINARY STATEMENT

Plaintiff Robert Pluma brings this action pursuant to 42 U.S.C. § 1983 against defendants alleging that he was deprived of his Constitutional rights as a result of an injury he sustained on December 31, 2011 at an Occupy Wall Street event in Zuccotti Park. Defendants City of New York, Carl Soreco, Meghan O'Leary and Christopher Vega[1] now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(f).

## STATEMENT OF FACTS

Protestors vastly outnumbered police and security on December 31, 2011. The police and security were unable to stop protestors from pulling apart barricades and stacking them in the center of the park. Exhibit F 00:25-00:58; 01:20-01:40; 02:15-04:00; 06:58-07:10; 09:45-10:24; 11:00-11:25; 15:34-15:50. This is even more apparent when the police tried to take any action by making an arrest, entering the park, or preventing protestors from taking barricades. Exhibit F 02:15-04:00; 16:23-18:10; Exhibit H 01:21-02:15; Exhibit I 01:15-01:35.

Plaintiff alleges that he went to Zuccotti Park on December 31, 2011 for reflection on the efforts of Occupy Wall Street. Exhibit E ¶ 32-33. Plaintiff states that the police had set up metal barricades around most of the park. Exhibit E ¶¶ 35. Plaintiff states that he "and others" peacefully remained in the park. Exhibit E ¶ 40. However, the police had to deal with the entire crowd, which was more properly characterized as aggressive to the police, swarming them when they took action, Exhibit F 02:22-03:15; 16:34-18:00; Exhibit H 01:21-02:15, cursing at them and ignoring orders to back up, Exhibit F 16:23-17:03, Exhibit H 01:21-02:15, pushing the police out of the park, Exhibit F 18:26-19:00, Exhibit H 01:21-02:15, fighting with them to

[1] Defendants note that per the docket no additional defendants have been served at this time. Additionally, counsel has not received requests for representation from the individual defendants added in the Second Amended Complaint. This motion is filed on behalf of all served and represented defendants at this time, and should counsel receive additional requests for representation any subsequent papers will be filed on their behalf as well assuming that representation is approved.

pull more barricades away from the perimeter of the park, Exhibit F 15:34-15:50; Exhibit G 00:00-00:04; 00:06-00:12; 00:22-00:30, pushing barricades into police vehicles, Exhibit F 23:10-23:30, even throwing objects and liquids at police, Exhibit G 00:28-00:30; Exhibit I 00:10-00:12; 01:33; 02:12.   Plaintiff was actually part of the crowd that pushed the police out of the park, even if he took no aggressive action intentionally.   Exhibit F 19:02-19:06.   Plaintiff began filming the activity he saw and planned on publishing it to social media.   Exhibit E ¶¶ 42-43. Plaintiff next alleges that officers lifted a metal barricade above their waist and pushed it into a group of protestors.   Exhibit E ¶ 45.   This is untrue as demonstrated by *inter alia,* Exhibit G 00:11-0032; Exhibit K 02:33-04:06.   Plaintiff states the purpose of this action was to knock protestors down and knock them backwards, but the video evidence shows police attempting to hold the barricades in place.   Exhibit E ¶ 46; Exhibit K3, K4.   Plaintiff states he was knocked down by police and injured his hand.   Exhibit E ¶ 47.   However, the video shows plaintiff's characterizations of the crowd and police conduct is inaccurate.

Plaintiff also alleges that two officers targeted the group of protestors with pepper spray while the metal barricade was being used, and that he was struck by it, or the crowd. Exhibit E ¶ 49-52.   Plaintiff states he was blinded, incapacitated, and knocked down restricting his liberty of movement.   Plaintiff claims he moved a few feet away before vomiting.   Exhibit E ¶ 55.   Plaintiff unsuccessfully sought help on the scene from other protestors before taking the subway to the hospital over forty minutes later.   Exhibit E ¶¶ 57-58; Exhibit F 53:40-54:05. Plaintiff's pleadings indicate that twelve police officers pushed the metal barricade into the crowd.   Exhibit E ¶¶ 71-72.   However his complaint exhibit puts this number at no more than seven.   Docket Entry [54-1]; Exhibit E p. 33.

# RULE 12(b)(6) STANDARD FOR DISMISSAL

In deciding a motion to dismiss, "a court may consider documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Viewing facts in the light most favorable to the non-moving party is prescribed to material facts that are in genuine dispute. "[W]e take as true the facts set forth in the complaint, [] to the extent they are not contradicted by the video evidence." Garcia v. Doe, 779 F.3d 84, 87-8 (2d Cir. 2015)(citations omitted).

Finally, it is well-established that when the plaintiff relies on a partial or incomplete version of a document, website or other source material, the court may consider the full content of that document or material in deciding a motion to dismiss. San Leandro v. Phillip Morris, 75 F.3d 801, 809 (2d Cir. 1996); Dumont v. Litton Loan, 2014 U.S.Dist. LEXIS 26880, *73-4 fn35 (S.D.N.Y. 2014) (article, blog, press release); Koplyay v. Cirrus Logic, 2013 U.S. Dist. LEXIS 171109 at *9 (S.D.N.Y. 2013) (press releases and investor calls); In Re Parmelat, 377 F.Supp.2d 390, 400-401 (S.D.N.Y 2005).

## PLAINTIFF'S EXCESSIVE FORCE CLAIM MUST BE DISMISSED AND THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

An "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment ..." Graham v. Connor, 490 U.S. 386, 394 (1989). A "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004)(quoting Graham,

490 U.S. 397). A Fourth Amendment seizure occurs "only where there is a governmental termination of freedom of movement through means intentionally applied, such that the person [is] stopped by the very instrumentality set in motion or put in place in order to achieve that result." Hickey v. City of New York, 2004 U.S. Dist. Lexis 23941, 46-7 (S.D.N.Y. 2004) (quoting Brower v. County of Inyo, 489 U.S. 593, 597-599 (1989)); aff'd, 173 Fed. Appx. 893 (2d Cir. 2006).

The reasonableness standard "requires careful attention to the facts and circumstances of each particular case…" Graham, 490 U.S. 396. This includes weighing the "severity of the crime at issue, [the] threat to the safety of the officers [], and whether [the subject] is actively resisting arrest or attempting to evade arrest." Id. As discussed above, this is an objective test to be assessed as an officer on the scene without the benefit of knowing how events unfolded, and with deference to the "split-second judgments" in "tense, uncertain, and rapidly evolving" situations that the police officers faced. Id. 396-397.

Plaintiff's complaint presents a scene where officers deployed peppers spray on a group of peaceful protestors without provocation, and that the group committed no crimes, posed no threat to officers, and had not ignored any orders from police. Each of these points is demonstrably not true.

Examples of moments when the video depicts protestors throwing objects or liquids at officers prior to the incident with plaintiff can be seen at least 4 times, video still G4; Exhibit I 00:10-00:12; 01:33; 02:12; Exhibit J 00:12-00:14 and video still J1. Examples of the protestors rushing and overwhelming the police by sheer numbers prior to the incident with plaintiff are at Exhibit F 02:15-04:00; 16:23-19:00 and Exhibit H 01:21-02:15. Just a few minutes before plaintiff's injury, the protestors physically pushed the police out of the park as

they tried to make an arrest. Exhibit F 16:23-19:06; Exhibit G 01:21-02:15. The crowd did this while calling the police Fascists, and Nazi Pigs (Exhibit H 01:21-01:55) and angrily chanting "shame" (Exhibit F 18:10-19:23). Once the police were pushed out of the park some protestors settled on "Bloomberg's Monkey's." Exhibit I 2:10-02:21. Members of the crowd also ignored numerous warnings by police and security personnel to get back. Exhibit F 16:23-16:45; 16:45-17:03; Exhibit H 01:21-01:55. Protestors responded to these orders by cursing the officers and continuing to push into them while they attempted to make an arrest. Exhibit F 16:23-17:03; Exhibit H 01:21-02:15.

It is also beyond dispute that this extremely aggressive crowd was pulling down the barricades around the park. The pile of barricades at the center of the park can be seen at Exhibit F 38:45-39:05. The protestors pulling barricades into the park while security and police attempted to stop them can be seen in numerous videos. Exhibit F 00:25-04:00; 15:34-16:10; Exhibit G 00:00-00:11; Exhibit H 00:06-00:40; 00:45-01:00; Exhibit I 00:00-00:12; 01:15-01:35. Protestors also pushed into police, including with barricades, numerous times before the incident involving plaintiff. Exhibit F 01:12-01:40; 23:10-23:30; Exhibit G 00:06-00:11; Exhibit H 00:45-01:00; K 02:49; 02:57-03:00; 03:09-03:12.

Plaintiff's allegation that the police somehow charged with the barricade is implausible on its face and contradicted by the video. The barricade plaintiff claims caused his injury was pushed into police by a protestor approximately one minute before it was raised off the ground. Exhibit K 02:49, video still K1. Another protestor who fought over barricades throughout the evening can be seen manipulating the barricade connected to the one plaintiff was injured by moments before the incident. Exhibit G 00:00-00:11; Exhibit K 03:09-03:12. In fact, police can be seen attempting to hold that exact barricade in position in the minutes before as

protestors surge against it and police.  Exhibit K 02:28-03:05, video still K3, K4.  Exhibit G at 00:00-00:17 in the foreground shows protestors fighting with police over a barricade, but in the background, at G 00:11-00:17, a protestor can be seen pushing the barricade that plaintiff claims the police charged with before detaching it from the adjacent barricade.  Exhibit G 00:11-00:17, video still G5.

Confirming the unpredictable and aggressive nature of the protestors is the video taken from the protestor's side of that barricade.  At Exhibit J a protestor can be heard asking the other protestors to stop pushing because he does not want to be arrested.  Exhibit J 00:05-00:10.  Meanwhile other protestors call the police pigs and urge the crowd to push against the police before they begin throwing objects and sprays.  Exhibit J 00:00-00:17.

Given the circumstances, the officers faced danger from the aggressive crowd and thrown objects.  The use of pepper spray was not on a group of peaceful protestors committing no crimes, but on individuals who had physically pushed police out of Zuccotti Park when they tried to affect an arrest and continued to tear down and destroy private property while antagonizing police and security personnel.  Protestors were confrontational when given orders by police.  Protestors even got into physical battles when police attempted to stop them from pulling barricades into the park.  e.g. Exhibit I 01:15-01:35.  The barricade that plaintiff claims injured him was flanked on two sides by protestors pushing police and the barricade itself immediately before he was injured.  Exhibit G 00:11-00:17; Exhibit K 02:49; 02:57-03:00, video still K2; 03:09-03:12.

Regardless of plaintiff's own conduct the police confronted a volatile situation with an aggressive crowd taking physical advantage of their superior numbers.  They were throwing objects at the police, cursing them, pushing them and fighting with them to add to a

barricade pile. Alongside plaintiff protestors urged the crowd to push, while one protestor recognized a criminal act for what it was and asked them to stop so he would not face arrest. Exhibit J 00:05-00:10.

Defendants maintain that plaintiff did not suffer any cognizable 4th Amendment seizure, however defendants contend that any force used was reasonable given the volatile, dangerous and rapidly evolving situation the officers confronted. This is confirmed by the declaration exhibits, particularly when viewing the conduct of the police and protestors.

Alternatively, defendants are entitled to qualified immunity for any force used. The Second Circuit has held that "the qualified immunity defense is generally available against excessive force claims [where] a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Villa v. City of New York, 2013 U.S. Dist. LEXIS 49830, at *20 (S.D.N.Y. 2013) (citing Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995); see also Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) ("[E]ven officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes hazy border between excessive and acceptable force." (internal quotation marks omitted)).

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2015). The Supreme Court has noted "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam).

In this case, the officers were set upon from all sides by an aggressive crowd as they tried to maintain order while massively outnumbered. The protestors attempting to steal and detach barricades, while pushing police out of the park, led to a confrontation. The officers who attempted to hold the barricade in place, Exhibit K3, K4, had seen it pushed into them while protestors surrounded them on all sides, Exhibit K1, K2, and became increasingly hostile in the moments before plaintiff was injured. e.g. Exhibit G 00:06-00:11. Officers must be shielded by qualified immunity for making the decision to hold their ground. This was not an act of police aggression as demonstrated by the behavior of the crowd in the minutes leading up to that confrontation through to its aftermath. An officer would be reasonable, and certainly not incompetent, in making the decision to try and hold a barricade in place to keep it from being stolen, destroyed, or used as a weapon by aggressive protestors.

Furthermore, an officer would be reasonable, and certainly not plainly incompetent, in deploying pepper spray to attempt to end the incident with the barricade without causing any injury. At the time the pepper spray was deployed, officers faced a choice of letting the pulling and pushing over a single metal barricade continue or to attempt to end it some other way. This was a unique situation, and the use of pepper spray to end that incident was not only reasonable but effective, and reflected officers attempt to prevent conflict, injury and violence.

Finally, plaintiff was present in Zuccotti Park but has intermittently presented himself as a protestor or observer as necessary in this case. However plaintiff does not state that he was one of the protestors holding the barricade. He does not state that he was throwing things at officers. It is clear from the video that to the extent he was not pushing the barricade or hurling objects at police he was not the target of any force. To defeat a claim for qualified immunity "[e]xisting precedent must have placed the state or constitutional question… beyond

debate". <u>Plumhoff v. Rickard</u>, 134 S. Ct. 2012, 2023 (2014). As an individual present in Zuccotti Park plaintiff put himself in the midst of protestors aggressively confronting police. However, the law had not clearly defined seizure to encompass second hand contact on a peaceful bystander who chose to stand in the midst of violent protestors confronting police. In doing so plaintiff exposed himself to reasonable police action, and the individual defendants are entitled to qualified immunity on those grounds.

### PLAINTIFF'S FAILURE TO INTERVENE CLAIM MUST BE DISMISSED AND THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

"[I]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Back v. Hastings on Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 122 (2d Cir. 2004) (citations omitted). To have a viable failure to intervene theory plaintiff must plausibly present a claim that each defendant

> [O]bserves or has reason to know: (1) that excessive force is being used, see <u>O'Neill</u>, 839 F.2d at 11-12; (2) that a citizen has been unjustifiably arrested, see <u>Gagnon v. Ball</u>, 696 F.2d 17, 21 (2d Cir. 1982); or (3) that any constitutional violation has been committed by a law enforcement official, see <u>O'Neill</u>, 839 F.2d at 11. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. See <u>id</u>. at 11-12.

<u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994). Plaintiff appears to bring two failure to intervene theories. The first is based on failure to intervene against defendants Falcon, Duffy and John Doe Supervisors 1-4 for not recognizing Officer Vega as unfit for duty following an incident with a non-party protestor. Exhibit E ¶¶ 84-111; Exhibit F 22:01, Still F; Docket [54-3]. Plaintiff incorrectly alleges that prior to his injury Officer Vega was in an incident with a protestor which plaintiff describes in ¶¶ 91-98 of Exhibit E, and that this incident put the defendants on notice that they had to intervene to prevent a Constitutional violation by pepper spray. Plaintiff has also attached a still of that moment as an Exhibit to their Second

Amended Complaint, Exhibit E, Docket entry [54-3]. However, as shown in defendant's Exhibit F, and as plaintiff's counsel ultimately conceded to the Court in the pre-motion conference on July 14, 2015, Plaintiff's injury occurred before the incident with Officer Vega that he relies on for notice. The non-party incident could not provide an opportunity to prevent any harm even if the use of pepper spray was a Constitutional violation, which defendants contest. See Exhibit F 20:47, Still F2; compare Exhibit F 22:01, Still F; Docket [54-3].

Plaintiff's second failure to intervene theory is set forth against defendants Falcon, Duffy, Bellingeri and O'Grady[2]. Exhibit E ¶¶ 74-83. Plaintiff's claim fails for several reasons. First, as set forth above, excessive force was not being used and no constitutional violations took place. The police were using reasonable measures to try and contain an increasingly violent crowd that greatly outnumbered them. Exhibit F 16:00-23:30; Exhibit G 00:00-00:35. Second, the defendants had no reasonable opportunity to intervene to prevent any harm that did occur. The incident plaintiff complains about took place over at most ten seconds. Exhibit G 00:21-00:31. The four officers plaintiff brings this claim against could not prevent this incident, and were not even nearby when it began. Plaintiff attempts to bolster his theory with an allegation that the officers became increasingly undisciplined and aggressive over the time leading to plaintiff's incident, however this claim is sharply contradicted by the video. Exhibit E ¶ 81. Prior to the incident with plaintiff, the crowd was becoming increasingly aggressive with police and security, including by stealing barricades, physically confronting officers, and throwing objects at police. Exhibit E 16:00-23:30; Exhibit G 00:00-00:35. The four supervisors cannot be said to have had notice of any aggressive police or the incident involving plaintiff based on the chaos at the scene. Additionally, there was no meaningful opportunity to prevent

---

[2] Plaintiff alludes to other supervisors with respect to this claim. Exhibit E ¶ 74. Defendants request the failure to intervene claim be dismissed against any defendants who plaintiff has failed to identify, or alternatively that the arguments set forth be extended to include the unidentified defendants.

this harm as a matter of law, it occurred over a matter of seconds at an isolated spot with the crowd surrounding the police. Exhibit F 20:45-20:53; Exhibit G 00:00-00:35. Plaintiff presents no allegations that would put the four supervisory officers on notice of imminent unconstitutional or improper barricade use by the officers prior to the incident with plaintiff. He can present no more than threadbare recitals of his claim to indicate the supervisors aware of what happened, let alone that they had a chance to prevent it. For these reasons both of plaintiff's failure to intervene theories must be dismissed.

### PLAINTIFF'S 14TH AMENDMEND CLAIM MUST BE DISMISSED AND THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Any claims brought under the Fourteenth Amendment fail as a matter of law and must be dismissed. Plaintiff brings this action alleging two federal claims of excessive force and failure to intervene. Exhibit D, ¶¶130-142. Because the Fourth Amendment provides an explicit textual source for redress of these claims, plaintiff may not seek relief pursuant to the Fourteenth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989) ("Today we make explicit…that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest…or other "seizure"…should be analyzed under the Fourth Amendment") (emphasis in original); see also Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134, *22 fn.5 (S.D.N.Y. 2015) (determining that since plaintiff's excessive force claim survives, plaintiff's failure to intervene claim similarly survives to the extent it is based on the alleged use of excessive force).

"The Supreme Court has repeatedly held that'[w]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Zahrey v. City of New York, 2009 U.S.

Dist. LEXIS 8177, *103 (S.D.N.Y. 2009) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998); see also Albright v. Oliver, 510 U.S. 266, 273 (1994); Murphy v. Lynn, 118 F.3d 938, 945-46 (2d Cir. 1997). As noted above, any force used by the individual officers was objectively reasonable. Consequently, any claims in connection with allegations of excessive force or failing to intervene must be dismissed.

Assuming that the Court finds that plaintiff may bring a claim under the Fourteenth Amendment despite the reasonableness of the officers' actions, any claim under this Amendment would still be subject to dismissal. While plaintiff's complaint leaves defendants no choice but to speculate as to whether plaintiff seeks relief under substantive or procedural grounds, any claims under the Fourteenth Amendment should be analyzed as a substantive due process claim. See Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134, *15 n.2 (S.D.N.Y. 2015) (absent a showing of "seizure" under the context of a Fourth Amendment claim, plaintiff's force claim would have been analyzed as a substantive due process claim under the Fourteenth Amendment), see also Hickey v. City of New York, 2004 U.S. Dist. LEXIS 23941, *48 (S.D.N.Y. 2004) ) ("police misconduct outside of the context of a Fourth Amendment seizure may still give rise to claims under the substantive due process protections") (citations omitted).

A substantive due process claim is only appropriate where governmental conduct "shocks the conscience" and transgresses the "decencies of civilized conduct." Rochin v. California, 342 U.S. 165, 172-73 (1952). Purely negligent conduct by officials is not constitutionally recognized under a substantive due process claim. See Daniels v. Williams, 474 U.S. 327, 328 (1986). Nor is recklessness or gross negligence except in rare instances. See County of Sacramento, 523 U.S. at 849-50 (citations omitted). Hence, in analyzing such a claim

as it relates to excessive force, courts in this Circuit consider factors such as: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; and 3) whether the force applied was in a good faith effort to maintain or restore discipline/order. See Hemphill v. Schott, 141 F.3d 412, 419 (2d Cir. 1998) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), (Rev'd. on other grounds)); Ali v. Szabo, 81 F. Supp. 2d 447, 455 (S.D.N.Y. 1999).

Applying these factors and the precedent here it cannot be said that the actions of the individual officers shocked the conscience. The officers in this matter confronted a dangerous crowd of protestors who physically pushed them out of the park and pelted them with object and liquids. Further, indisputable video evidence shows that any application of force used was reasonable and necessary for officers to restore order and regain control over a situation that had rapidly escalated. Protestors can be seen on video pushing barricades, police, and even ignoring lawful orders to cease their dangerous activities. Moreover, once order was resumed and the barricade in question was released, no additional force was used. Thus the actions taken by the individual officers to secure their persons and that of others cannot be seen as egregious or outrageous. Further, officers had a legitimate governmental interest in mainlining public order and securing property such as the barricades. Therefore, based on the foregoing any claims under the Fourteenth Amendment must be dismissed.

## PLAINTIFF'S STATE LAW CLAIMS MUST BE DISMISSED

### A. Plaintiffs' Assault and Battery Claims Must be Dismissed

Plaintiff's claims for assault and battery fail as any contact made by officers was privileged and reasonable. It is well settled that "the test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to

analyze a Fourth Amendment excessive force claim." <u>Tatum v. City of New York</u>, 2009 U.S. Dist. LEXIS 3512, *29 (S.D.N.Y 2009) (<u>citing</u> <u>Pierre-Antoine v. City of New York</u>, 2006 U.S. Dist. LEXIS 28963, *25 (S.D.N.Y. 2006).  As noted above, any force used by the officers was objectively reasonable given the circumstances they confronted in the park.

Additionally to the extent officers are granted qualified immunity for their federal claims, with respect to the state law claims the officers are immune from suit if they were exercising the discretion and judgment inherent to his or her job.  <u>Estate of Yankel Rosenbaum</u>, 982 F. Supp. 894, 895-6 (E.D.N.Y. 1997).  Accordingly Plaintiff's state assault and battery claims must be dismissed.

### B.       Plaintiffs' State Constitutional Claims Fail

Plaintiff has asserted a State Constitutional claim seeking damages for the deprivation of rights including the right to speak freely, peaceably assemble and be free from excessive force.  Exhibit D, ¶¶ 175-180.  Plaintiff's State Constitutional claim is precluded as adequate alternative remedies exist. As noted in <u>Noonan v. City of New York</u>:

> "Where a plaintiff has alternate remedies available both at common law and under a federal statute such as Section 1983, 'h[is] state constitutional tort claim is [considered] redundant and precluded.' <u>See</u> <u>Biswas v. City of New York</u>, 973 F. Supp. 2d 504, 522 (S.D.N.Y. 2013) (dismissing constitutional tort claim for violation of Article One, Section Twelve of the New York State Constitution where plaintiff could also proceed with either common law claim or Section 1983 claim); <u>See also</u> <u>Hershey v. Goldstein</u>, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013). [] This holds true even where the only valid alternate claim is against an individual defendant. <u>See</u> <u>Waxter v. State</u>, 33 A.D.3d 1180, 1182, 826 N.Y.S.2d 753 (N.Y. App. Div. 2006) (barring constitutional tort against State of New York where adequate remedy available against offending officer at common law, regardless of difference in potential monetary recovery)."

<u>Noonan v. City of New York</u>, 14 Civ. 4084 (S.D.N.Y. June 26, 2015) (LTS), 2015 U.S. Dist. LEXIS 83451, *26-27. Here, any state constitutional claim for excessive force must be dismissed as redundant as plaintiff has already asserted applicable claims under state law

as well as under the 4th and 14th Amendments. Additionally, as noted above, plaintiff's claims related to excessive force, failure to intervene and due process are without merit.

Likewise, plaintiff's state constitutional claims related to his abilities to speak freely and peaceably assemble should also be dismissed as alternative remedies exist under the First Amendment. "[F]ree speech [and assembly] claims under the First Amendment and the New York State Constitution are subject to the same standards and the Court's analysis applies to both [claims]". <u>Martinez v. Sanders</u>, 2004 U.S. Dist. LEXIS 10060, *3 (S.D.N.Y. 2004) (<u>citing</u> <u>Housing Works. Inc., v. Turner</u>, 179 F. Supp. 2d 177, 199 n.25 (S.D.N.Y. 2001) (rev'd on other grounds). Further any claims related to free speech and assembly must be dismissed as this Court has already determined that plaintiff failed to raise a plausible claim under the First Amendment. <u>See</u> <u>Pluma v. City of New York</u>, 2015 U.S. Dist. LEXIS 48134, *21 (S.D.N.Y. 2015). The complaint is devoid of facts to suggest that plaintiff was in the park to engage in protest activity or assemble as a member of the Occupy Wall Street movement. <u>Pluma</u>, at *18. This Court also found that the allegations were not clear as to what protected speech plaintiff was engaged in (<u>Id</u>.) or that a causal connection could be established between the officers' conduct and plaintiff's alleged speech. Lastly, even if a First Amendment violation were found, which it was not, the officers in this action would be entitled to qualified immunity as plaintiff's rights would not have been clearly defined. Accordingly, any claims related to free speech and assembly must be dismissed.

### C.     Plaintiff's Negligence Claim Fails

A party may not recover on inconsistent theories of liability where the Complaint only alleges one theory of liability. <u>See</u> <u>Busch v. City of New York</u>, 2003 U.S. Dist. LEXIS 27571 (E.D.N.Y 2003). "Various federal courts within this circuit have held, [], that under New York State law, when a plaintiff brings excessive force and assault claims which are premised

upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." Tatum v. City of New York, 2009 U.S. Dist. LEXIS 3512, *31 (S.D.N.Y 2009) (citing Clayton v. City of Poughkeepsie, 2007 U.S. Dist. LEXIS 55082, *18-19 (S.D.N.Y.2007)); see also O'Neil v. Krzeminski, 839 F. 2d 9, n. 1 (2d Cir. 1987) ("A required element of the tort is an intention to use force. Negligence is not a basis of liability for constitutional torts."); Bernard v. United States, 25 F. 3d 98, 102 (2d Cir. 1994) ("Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care[.]")

Here, because plaintiff pleads intentional conduct on the part of the officers, no reasonable inference can be drawn that the contact was "inadvertent, accidental, or anything but willful." Dewitt v. Home Depot U.S.A., Inc., 2012 Dist. LEIXIS 130963, *33 (E.D.N.Y. 2012) (citations omitted). Plaintiff alleges that officers worked together and used a metal barricade as a battering ram against a group in which he was a part. Exhibit D, ¶¶ 44,72. Plaintiff further alleges that the purpose of using the metal barricade as a battering ram was to push the group, which included the plaintiff, backwards and knock them down. Id.,¶46. As plaintiff has asserted claims for excessive force, assault and battery, he must be precluded from arguing in the alternative that the same facts give rise to either negligence or gross negligence. See Tatum, at *31-32.

### D. Plaintiffs' Negligent Retention, Hiring, Training and Supervision Claims Must be Dismissed

The negligent retention, hiring, training, and supervision claim must be dismissed.

"We find that defendants are entitled to summary judgment dismissing plaintiff's negligent hiring, retention and training claims. Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention.

<u>Karoon v. New York City Transit Auth.</u>, 241 A.D.2d 323, 324 (1st Dep't 1997) (citations omitted). <u>See</u> <u>also</u> <u>Griffin v. City of New York</u>, 67 A.D.3d 550, 551 (1st Dep't 2009). Plaintiff's claim fails as they have asserted a respondeat claim against the City of New York which is not at issue, and the individual defendants are represented. Accordingly Plaintiff's claims for negligent retention, hiring, training and supervision must be dismissed.

**ALL OF PLAINTIFF'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(1) AS THE STATUTE OF LIMITATIONS HAS RUN AND THE ADDITION OF THESE DEFENDANTS DOES NOT RELATE BACK**

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction." <u>Gunn v. Minton</u>, 133 S. Ct. 1059, 1064 (2013). A case must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff carries the burden of establishing that subject matter jurisdiction exists over [his] complaint. <u>See</u> <u>Smith v. St. Luke's Roosevelt Hosp.</u>, 2009 U.S. Dist. LEXIS 69995, *27 (S.D.N.Y. 2009).

Here, the Court lacks subject matter jurisdiction as to all claims related to the individual defendants as the statute of limitations has run on the claims against them prior to their addition in this lawsuit. Further, the relation back doctrine pursuant to Fed. R. Civ. P. 15(c) is inapplicable as plaintiff cannot show that his failure to add these defendants during the three year statutory period is excusable. <u>Owens v. Okure</u>, 488 U.S. 235 (U.S. 1989).

Plaintiff alleges Fourth and Fourteenth amendment violations stemming from an incident on December 31, 2011. The time to add these individual defendants ran on December 31, 2014. Nonetheless, plaintiff failed to add these individuals within the statutory time frame and instead sought to add them in the amended complaints filed in April and June of 2015.

Any argument that these individual officers relate back to the initial complaint pursuant to Fed. R. Civ. P. 15(c) is without merit. In determining whether a party may be added after the statute of limitations has run on § 1983 claims, the court applies Fed. R. Civ. P. 15(c)(1). <u>See Rochester v. Sixth Precinct Police Station</u>, 2010 U.S. App. Lexis 6127, *2 (2d Cir. 2010). This rule permits amendment only where 1) The new claim arises out of the same conduct transaction or occurrence as is pled in the original complaint; 2) the new party had actual or constructive notice of the filing of the first pleading within 120 days of the commencement of the lawsuit; and 3) within that period the new party knew or should have known that but for a mistake concerning the identity of the proper party they would have been included in the original complaint. <u>See Esmilla v. Cosmopolitan Club</u>, 2011 U.S. Dist. Lexis 23784, *7 (S.D.N.Y. 2011) (<u>citing</u> Fed. R. Civ. P. 15(c)(1)(C)(i-ii)).

As noted by the Supreme Court, the knowledge prong turns on what the individual defendants to be added knew or should have known, not on plaintiff's knowledge or his timeliness in seeking to amend his complaint. <u>See</u> <u>Esmilla</u> 2011 U.S. Dist. Lexis 23784, at *7. (<u>citing</u> <u>Krupski v. Costa Crociere S. p. A.</u>, 130 S. Ct. 2485, 2490 (2010)). Here, there is no evidence to suggest that the individual officers had knowledge or should have known that this lawsuit would have been brought against them. Further nothing in the complaint could have led these officers to draw such a conclusion and knowledge cannot be imputed by use of the same attorney, in this case Corporation Counsel, where counsel had no way to ascertain who the individual defendant's might be.

Moreover "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." <u>Palmer v. Stuart</u>, 274 Fed. Appx. 58, 59 (2d Cir. 2009). This includes

attempts by plaintiff to substitute an individual defendant with "John Doe" place fillers within a complaint. See In re Simon II Litig., 2002 U.S. Dist. LEXIS 25632 (E.D.N.Y. 2002)("[W]hen plaintiff substitutes the actual identity of the proper defendant after labeling it 'John Doe,' relation back is not permitted unless the actual substituted defendant was aware that it was the 'John Doe'") (citing Barrow v. Wethersfield Police Dep't., 66 F.3d 466, 469-70 (2d Cir. 1995).

Here, plaintiff filed his initial complaint naming only the City and 50 John Does with no specific allegations against them. Defendant City disclosed the identity of defendants Soreco, O'Leary and Vega in 2014 after plaintiff disclosed his video from December 31, 2011. However, plaintiff did not name these defendants or any others within the statute of limitations.[3] Therefore, based on plaintiff's failure to comport with the three year statute of limitations all claims against the individual defendants must be dismissed.

### PLAINTIFF'S PLEADINGS MUST BE STRUCK PURSUANT TO FED. R. CIV. P. 12(f)

In the March 31, 2015 order the Court dismissed plaintiff's Municipal Liability claim. Exhibit B pp. 33-34. Subsequently, plaintiff filed his proposed second amended Complaint on April 10, 2015. Exhibit D. The proposed Second Amended Complaint attached as Exhibit T various claims and twelve video stills of a member of the police force from November 17, 2011. Exhibit D, docket entry [41-12]. That individual was not a party to this action or present for the incident with plaintiff on December 31, 2011. Defendants pointed this out to the Court at the April 15, 2015 conference and the Court instructed plaintiff in clear terms to strike that portion of the complaint.

---

[3] Plaintiff filed two actions in late 2014 in both State and Federal Court which seek relief for the same incident as this action. The federal action, 14 Civ. 9969 (LTS), inexplicably named 47 individual defendants and 50 John Does, 3 of which are also named in this case, Soreco, O'Leary and Vega. Exhibit L. Plaintiff's state action, 162488-2014, names 92 individuals, none of whom overlap with the defendants in this action. Exhibit M. As plaintiff has timely named Soreco, O'Leary and Vega in the other federal action, defendants are willing to withdraw their argument under 15(c)(1)(C) here to the extent plaintiff withdraws all other pending actions against those three defendants.

Subsequently, plaintiff filed his Second Amended Complaint and detailed the incident in the twelve video stills, choosing to only omit the images he had included. Exhibit E ¶¶ 112-121. This includes a footnote where plaintiff purports to set forth a Monell theory.[4] Exhibit E ¶ 117, fn2.

In <u>Wynder v. McMahon</u>, 360 F.3d 73, 81 (2d Cir. 2004) the Second Circuit relied on <u>Salahuddin v. Cuomo</u> for the proposition that the Court may strike redundant or immaterial matter. 861 F.2d 40, 43 (2d Cir. 1988). Fed. R. Civ. P. 12(f) allows the court to strike immaterial, impertinent, or scandalous matter. Here, plaintiff included a <u>Monell</u> theory in direct contravention of the March 31, 2015 court order. The Court further instructed plaintiff at the April 15, 2015 court conference to exclude the non-party information from an irrelevant date. Instead plaintiff included the same information while only omitting the twelve video stills. Plaintiff has at least included irrelevant, impertinent, and scandalous material that must be striken from the complaint. Fed. R. Civ. P. 12(f). At worst plaintiff has directly defied two court orders to include the improper material found in Exhibit E ¶¶ 112-121.

## CONCLUSION

For the foregoing reasons, defendants respectfully requests that the Court dismiss Plaintiff's complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

---

[4] Defendants note that plaintiff also sets forth elements of a <u>Monell</u> theory at Exhibit E ¶ 127, however that inclusion may have been an oversight, where ¶¶ 112-121 could not be.

Dated:      New York, New York
            August 7, 2015

                              ZACHARY CARTER
                              Corporation Counsel of the City of New York
                              *Attorney for Defendant City of New York*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2373


                              By: _____/s/_____
                                  Andrew Lucas; Joy Anakhu
                                  Assistant Corporation Counsel
                                  Special Federal Litigation Division



TO:     The Honorable Loretta A. Preska
        United States District Judge
        Southern District of New York
        500 Pearl Street
        New York, NY 10007

        David Thompson
        Stecklow Cohen and Thompson
        217 Centre St, 6th Floor
        New York, NY 10013