IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

ROBERT PLUMA,

Index No. 13cv2017 (TPG)

PLAINTIFF,

vs.

Memorandum of Law
In Opposition

THE CITY OF NEW YORK, a municipal entity,
et al.

DEFENDANTS.

---

# TABLE OF CONTENTS

I. The Parties Before the Court on this Motion.................................................................1

II. The Applicable Rule 12 Standard ...............................................................................1

III. Video Evidence ..............................................................................................................1

IV. The Legal Standard for Claims of Excessive Force.................................................3

V. The Plaintiff States a Claim for Excessive Force ......................................................5

    A. Application of the Graham Factors to the Plaintiff.............................................. 6

    Graham Factor 1: The Severity of Robert Pluma's Crime .................................6

    Graham Factor 2: the Threat Posed By Robert Pluma ........................................7

    Graham Factor 3: Whether Robert Pluma Was Resisting or Fleeing Arrest............................7

    Summing Up the Graham Factors Applied to Robert Pluma ...........................7

    B. Application of the Graham Factors to Plaintiff's Group.............................. 7

    Graham Factor 1: The Severity of the Plaintiff's Group's Crime ....................8

    Graham Factor 2: Whether the Plaintiff's Group Posed an Immediate Threat..................... 12

    Graham Factor 3: Whether the Plaintiff's Group Was Resisting or Fleeing Arrest............ 13

    Summing Up the Graham Factors Applied to the Plaintiff's Group .......................... 13

    C. The Graham Factors Cannot Rationally be Applied to the Park as a Whole .........13

VI. Qualified Immunity.....................................................................................................15

VII. Assault and Battery .....................................................................................................16

VIII. Negligence Pled in the Alternative.........................................................................17

IX. Statute of Limitations & Failure to Intervene .......................................................18

X. Substantive 14th Amendment Claim .......................................................................19

XI. The Motion to Strike ..................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Adler v. Pataki*, 185 F.3d 35 (2d Cir. N.Y. 1999) ............................................................17

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. Conn. 2004)..............................4

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............................................1

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir. 2004).............. 15

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. N.Y. 2007) ........................................... 20

*Bernard v. United States*, 25 F.3d 98 (2d Cir. N.Y. 1994) ........................................................... 17

*Brown v. City of New York*, 2015 U.S. App. LEXIS 14517 (2d Cir. N.Y. Aug. 19, 2015) ..... 4, 14, 16

*Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) .................................................1

*Cowan v. Breen*, 352 F.3d 756 (2d Cir. 2003).................................................................................. 15

*Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63 (2d Cir. N.Y. 1998) ...............................2

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................................passim

*Henry v. Daytop Village*, 42 F.3d 89 (2d Cir. N.Y. 1994)............................................................. 17

*Holdeen v. United States*, 186 F. Supp. 76 (S.D.N.Y. 1960) ..........................................................2

*Jamison v. Metz,* 541 Fed. Appx. 15 (2d Cir. 2013)....................................................................... 16

*Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae*, 243 A.D.2d 168, 177 (N.Y. App. Div. 1st Dep't 1998).................................................................................................................. 18

*Kalfus v. New York & Presbyterian Hosp.*, 476 Fed. Appx. 877, 880 (2d Cir. N.Y. 2012)...1

*Laurie Marie M. v. Jeffrey T. M.*, 159 A.D.2d 52 (2d Dep't 1990)............................................... 16

*Mack v. Howard*, 2014 U.S. Dist. LEXIS 82440 (W.D.N.Y. June 16, 2014)................................2

*McLaurin v. Falcone,* 2007 U.S. App. LEXIS 1839 (2d Cir. N.Y. Jan. 25, 2007) .....................5

*Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633 (S.D.N.Y. 2001).................... 20

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005)............................................................. 16

*O'Bert v. Vargo*, 331 F.3d 29 (2d Cir. 2003) .................................................................................... 16

*O'Hara v. City of New York*, 570 Fed. Appx. 21 (2d Cir. N.Y. 2014) ........................................ 16

*O'Hara v. McAvoy,* 2013 U.S. Dist. LEXIS 119417 (E.D.N.Y. Aug. 22, 2013) ......................... 15

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. Conn. 1988)............................................................... 17

*Papineau v. Parmley*, 465 F.3d 46 (2d Cir. 2006) ....................................................................... 16

*People v. Peacock*, 68 N.Y.2d 675 (1986) ...........................................................................................5

*People v. Stevenson*, 31 N.Y.2d 108 (1972)........................................................................................5

*Pluma v. City of New York*, 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. Mar. 31, 2015) ..... 1, 19

*Rich v West 31st St. Assoc., LLC*, 92 A.D.3d 433 (N.Y. App. Div. 1st Dep't 2012).............. 18

Robison v. Via, 821 F.2d 913 (2d Cir. Vt. 1987).................................................................................5

*Simcoe v. Gray*, 577 Fed. Appx. 38 (2d Cir. N.Y. 2014) ................................................................. 16

*Sullivan v. Gagnier*, 225 F.3d 161 (2d Cir. N.Y. 2000) ...................................................................... 4

*Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. Conn. 2014) ............................................................... 16

*Tolan v. Cotton*, 134 S.Ct. 1861 (2014) ............................................................................................ 2

*Weather v. City of Mt. Vernon*, 474 Fed. Appx. 821 (2d Cir. N.Y. 2012) ................................... 7

*Wertzberger v. City of New York*, 254 A.D.2d 352 (N.Y. App. Div. 2d Dep't 1998) ........... 18

*Weyant v. Okst*, 101 F.3d 845 (1996) .............................................................................................. 15

*Williams v. Wood*, 375 Fed. Appx. 98 (2d Cir. N.Y. 2010) ......................................................... 15

*Wilmoth v. Sandor*, 259 A.D.2d 252 (N.Y. App. Div. 1st Dep't 1999) ..................................... 18

*Ybarra v. Ill.*, 444 U.S. 85 (1979) ........................................................................................................ 5

## Statutes

New York Penal Law 35.30 ................................................................................................................... 17

## Rules

Fed. R. Civ. P. § 12(f) ........................................................................................................................... 21

Fed. R. Civ. P. § 8(e)(2) ....................................................................................................................... 18

Fed. R. Civ. P. § 12(b)(6) ....................................................................................................................... 1

Fed. R. Civ. P. § 12(c) ............................................................................................................................. 1

## I.     The Parties Before the Court on this Motion

The movants presently before the Court are, as stated in the notice of motion, City of New York, Carl Soreco, Meghan O'Leary, and Christopher Vega. Counsel for the defendants has does not represent the other officers in this case. The defendants' memorandum of law appears to address issues that might be raised by these other officers, should they appear and move the court for relief, but on this motion these issues are not properly before the Court. The City of New York may not move for dismissal. Under Fed. R. Civ. P. 12(g), a party may make only one motion under Rule 12(c). The City of New York has already made that motion.

## II.     The Applicable Rule 12 Standard

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). "When deciding a motion to dismiss, courts 'may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Pluma v. City of New York*, 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. Mar. 31, 2015) (quoting *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

## III.     Video Evidence

This motion is based in large part on video which the defendants contend was incorporated into the complaint, and which they say compels dismissal of this action. Relevant videotape "whose accuracy is unchallenged," may overcome the non-movant's evidence only if "it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." *Zellner v. Summerlin*, 494 F.3d 44 (2d Cir. N.Y. 2007) (citing *Scott v. Harris*, 127 S. Ct. 1769, 1775-76, 167 L. Ed. 2d 686 (2007)). *Accord Kalfus v. New York & Presbyterian Hosp.*, 476 Fed. Appx. 877, 880 (2d Cir. N.Y. 2012) (non-movant's account must be "blatantly contradicted" by video).

1

"[E]ven when there is a video, courts must still draw reasonable inferences in the nonmoving party's favor." *Mack v. Howard*, No. 11-CV-00303-A F, 2014 U.S. Dist. LEXIS 82440, 2014 WL 2708468, at *1 (W.D.N.Y. June 16, 2014) (citing *Tolan v. Cotton*, 134 S.Ct. 1861 (2014)). *Accord Sanders v. City of New York*, 2015 U.S. Dist. LEXIS 42698 (E.D.N.Y. Jan. 7, 2015), adopted by 2015 U.S. Dist. LEXIS 40972 (S.D.N.Y. March 30, 2015). Where "conflicting interpretations" may be drawn from the same video, judgment as a matter of law is not permissible. *Mack*, 2014 U.S. Dist. LEXIS 82440 at *10-11 (citing *Holdeen v. United States*, 186 F. Supp. 76, 78 (S.D.N.Y. 1960)).

The Second Amended Complaint, which supersedes all prior pleadings, incorporated still images only from Video F, Video G, and from a video **not** presented by the defendants on this motion, annexed hereto as Video L.[1] The defendants cannot claim, therefore, that the Second Amended Complaint incorporates any of the other videos. The plaintiff particularly objects to the consideration of Video I, because it does not depict the incident which the is subject of the complaint, and it is not clear from the video whether it was filmed before or after the incident. The plaintiff also objects to the consideration of the videographer's narration of Video F. The videographer of the video submitted by the defendants as Exhibit F recorded his own commentary concerning the events that he filmed. Video, to the extent that it is clear, has a certain degree of reliability. The videographer's narration, however, is simply a series of unsworn out-of-court statements whose reliability cannot be determined.[2] The plaintiff did not rely on or incorporate that narration into the complaint.

The defendants have presented the Court with another set of unsworn allegations: the defense counsel's subjective interpretation of the video. A significant portion of the story that counsel from the defendants tells is either contradicted by the video or not supported by it. It is the defendants burden to show that the video "utterly discredits" and "blatantly contradicts" the central

---

[1]    "[A]n amended complaint ordinarily supersedes the original, and renders it of no legal effect.'" *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. N.Y. 1998)

[2]    Some of the things the videographer says in his narration are plainly incorrect, such as at 19:53 – 1959, where the videographer says: "There are no barricades at this side of the park right now," even as his camera pans along barricades on that side of the park.

2

allegations of the complaint, so that it is plain that the plaintiff has no legitimate cause of action. Defense counsel's spin of the video has no place in this analysis – if counsel has to explain what the video shows, then the video does not meet the legal standard required.

Some of the defendants' interpretation of the video is simply false. The most glaring example is where the defendants state: "in the background, at G 00:11-00:17, a protestor can be seen pushing the barricade that plaintiff claims the police charged with before detaching it from the adjacent barricade." (Def. Memo p. 6, citing Ex. G 00:11-00:17, defendants' Ex. G5). In video still G5, the defendants have circled someone in plain clothes, wearing a black padded vest and a grey sweatshirt. There's a problem though: this person is a police officer, not a protestor. He can be seen in video K at 02:28 and 03:05 forming part of a police line. (See Def. Ex., K4). It's true that this police officer can be seen pushing the barricade into the crowd at 00:11 – 00:14 in video G. This fact, however, simply reinforces the plaintiff's allegation that the police use of the barricade against the crowd was unprovoked and unnecessary.

Similarly, the defendants allege that Exhibit F 02:15 – 04:00 shows "protestors rushing and overwhelming the police by sheer numbers." (Def. Memo p. 4). This segment of video shows a group of people quickly gathering across the street from the far northeast corner of the park (i.e., a block away from where the incident with the plaintiff later occurred). As a guesstimate, the group seems to consist of about twenty people. A police van arrives, and three officers exit the van and dash into the group. It is impossible from the video itself to tell what, if anything, is happening within the group.

## IV. The Legal Standard for Claims of Excessive Force

The Second Circuit recently explained the legal standard applied to claims of Excessive force as follows:

> The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's "'reasonableness' standard." Determining excessiveness requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." This balancing, the Court noted, "requires careful attention to the facts and circumstances of each particular case, including" the following three factors: 1. "[T]he severity of the crime at issue," 2. "whether the suspect poses an immediate

3

threat to the safety of the officers or others," and 3. "whether he is actively resisting arrest or attempting to evade arrest by flight." *Brown v. City of New York*, 2015 U.S. App. LEXIS 14517, 15-16 (2d Cir. N.Y. Aug. 19, 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395-396 (1989)).

It is **reversible error** to focus on only one of three factors – each must be considered and balanced against the others. *See Brown*, 2015 U.S. App. LEXIS 14517, at 19-22. In Brown, the Second Circuit held that, although the plaintiff indisputably resisted arrest (which pursuant to the third Graham factor weighs in favor of using some degree of force), it was reversible error to end the inquiry at this point (as the court below did), and to hold that the officers' use of force was reasonable.

Generally, whether the force employed was excessive is a **jury question**. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. Conn. 2004) ("the factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time"). "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown*, 2015 U.S. App. LEXIS 14517, at 23. Even where the facts are not in dispute, a jury is required to decide whether Fourth Amendment reasonableness has been exceeded. *See id.* at 22-23 ("The assessment of a jury is needed in this case. Even though most of the facts concerning the application of force are undisputed, a jury will have to decide whether Fourth Amendment reasonableness was exceeded.").

In Brown, the Second Circuit reaffirmed prior precedent such as *Sullivan v. Gagnier*, 225 F.3d 161 (2d Cir. N.Y. 2000), which held:

> The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer. *Sullivan*, 225 F.3d at 165-166.

In determining the reasonableness of the force used, the jury may consider "the availability of a less aggressive way" of accomplishing the police purpose. *Id.* at 22.

The jury may also consider allegations that the police initiated the conflict. *See McLaurin v. Falcone*, 2007 U.S. App. LEXIS 1839 (2d Cir. N.Y. Jan. 25, 2007) (citing Robison v. Via, 821 F.2d 913, 924 (2d Cir. Vt. 1987)) ("[T]he parties have provided conflicting accounts as to whether [plaintiff or the police] initiated the use of force. . . . Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury. . . ."); *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999). Relatedly, it is well established that when the police employ unreasonable force, the law permits the person targeted to use force in self-defense. *See McLaurin*, 2007 U.S. App. LEXIS 1839. "[A] citizen may use reasonable force in self-defense where the force exerted by the police in effecting an arrest is excessive." *People v. Stevenson*, 31 N.Y.2d 108, 112 (1972). *Accord People v. Peacock*, 68 N.Y.2d 675, 677 (1986).

## V.     The Plaintiff States a Claim for Excessive Force

The defendants cite Graham (Def. Memo pp. 3-4), as they must, but they make no effort to apply Graham to the present case. The Graham factors focus expressly on the conduct of the person against whom the force was employed: the nature of the crime committed **by the suspect**, whether **the suspect** poses an immediate threat to the safety of the officers, and whether **the suspect** is actively trying to resist or evade arrest. *See Graham*, 490 U.S. at 396. Thus, to support their argument that the Graham factors demonstrate that the force used was reasonable, the defendants were required to show that the conduct of Robert Pluma (his "crime," the "threat" posed by him, whether he was "resisting arrest") justified the force applied to him.

The Fourth Amendment standard that gives rise to the Graham factors is the same standard that applies to arrests and searches. *See Graham*, 490 U.S. at 394 ("The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right"). In the Fourth Amendment context, it is well established a police intrusion is justified (or not) with reference to the individual targeted. Thus, the Supreme Court holds: "Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Ybarra v. Ill.*, 444 U.S. 85, 91 (1979). A "person's

5

mere propinquity to others independently suspected of criminal activity" does not, without more, meet the Fourth Amendment standard. *Id.*

## A. Application of the Graham Factors to the Plaintiff

This Court, then, should first and foremost consider the question that the defendants have not even bothered to address, because the answer obviously refutes their assertion of entitlement to dismissal. This question is: did Robert Pluma's conduct justify the force used against him, when viewed through the Graham factors?

### GRAHAM FACTOR 1: THE SEVERITY OF ROBERT PLUMA'S CRIME

The defendants include not one word or scrap of video suggesting that Robert Pluma did anything wrong. Indeed, the video is **conclusive** that Robert Pluma never touched the barricade that was lifted up by the police. The defendants have presented no video that shows Robert Pluma engaged in any act of violence or threat of violence. There is no video showing Robert Pluma interfering with the barricades or with the police performance of their duties. None of the video submitted by the defendants contradicts the plaintiff's allegations that he was permitted to enter the park by the police and by Brookfield Management security. None of the video shows that Brookfield told the plaintiff to leave the park, or that the police issued orders to disperse the crowd.

Robert Pluma's only "crime" was to be in the vicinity of other people, some of whom were committing crimes. The crowd as a whole was loud and boisterous. Of course, as this was New Years' Eve, there was a loud and boisterous crowd at Times Square as well. Many people in the crowd chose to express themselves in ways that are best described as unpleasant: the videos capture many people (although not the plaintiff) saying angry and insulting things to the police. So far, however, none of this conduct is unlawful. A minority of members of the crowd made affirmative efforts to interfere with the metal barricades placed around the park (although the majority of this kind of behavior occurred after the incident and Robert Pluma's injury). A minority of members of the crowd may have, by their presence and proximity, made it more difficult for the police to undertake the few arrests made inside the park, although none of the video shows crowd members doing anything other than crowding around to film the arrests.

The video shows no police orders to disperse the crowd, so Robert Pluma's mere presence there was not unlawful. "Even if [the plaintiff] were engaged in disorderly conduct, the latter is not even a crime in New York state, but a non-criminal violation. ... The severity of the crime, then, if any, must be low." *Weather v. City of Mt. Vernon*, 474 Fed. Appx. 821, 823 (2d Cir. N.Y. 2012) (applying <u>Graham</u> factor 1).

### GRAHAM FACTOR 2: THE THREAT POSED BY ROBERT PLUMA

The defendants attempt to paint the entire crowd as threatening the safety of the police. Here, it is important to distinguish between what the defendants say the video shows and what the video actually does show. Two examples of the difference between these two things have already been given above. More will be given in the next subsection. However, none of the video cited by the defendants shows that Robert Pluma in any way presented a threat.

### GRAHAM FACTOR 3: WHETHER ROBERT PLUMA
### WAS RESISTING OR FLEEING ARREST

The third <u>Graham</u> factor need not detain us long. The police were not trying to arrest Robert Pluma, and he therefore did not resist or flee arrest. The video does not show Robert Pluma using any force at all.

### SUMMING UP THE GRAHAM FACTORS
### APPLIED TO ROBERT PLUMA

Of the three Graham Factors, the defendants have not established that any of them weigh in favor of the application of any force on Robert Pluma. As a result, the defendants have failed to show that they are entitled to dismissal of the plaintiff's claim for excessive force. With zero of three factors supporting the use of force on Robert Pluma, no reasonable officer could believe that it was lawful to use force on Robert Pluma. The defendants' motion should be denied.

### B.     Application of the Graham Factors to Plaintiff's Group

The same result would hold even if the Court were to apply the Graham factors to the entire group civilians within the scope of (and thus seized by) the police use of force, the result would be the same. For convenience, this group of people will be referred to as the Plaintiff's Group, even though the other people in the group were personally unknown to the plaintiff. It should be

emphasized that this group is defined not by the fact that they knew one another or acted in concert (they didn't) but by the fact that they were all subjected collectively to the defendants' use of force.

The defendants' motion compiles incidents (some real, some imaginary) from throughout the park and its surrounding streets (about one acre), and from about 20 minutes before to some indeterminate time after the incident, and declares that these incidents as a whole justify the use of force against the Plaintiff's Group in particular. The defendants have for the most part not attempted to show wrongdoing traceable directly to the Plaintiff's Group. The defendants have not established, through case law, that the Graham Factors admit of collective guilt or of force justified on a collective basis. But even if so, the Graham factors remain the mandatory test. The defendants have not even attempted to apply the Graham factors to the Plaintiff's Group.

### GRAHAM FACTOR 1: THE SEVERITY OF THE PLAINTIFF'S GROUP'S CRIME

The defendants make three allegations that arguably relate to the Plaintiff's Group: 1) immediately prior to the incident, another barricade was allegedly pushed into police, 2) the Plaintiff's Group instigated the struggle over the barricade that injured the plaintiff, and 3) the Plaintiff's Group threw objects and/or liquids at the police. Unlike the conduct attributed to the plaintiff, these allegations, if true, would be unlawful conduct. But there's the rub: item one was not performed by the Plaintiff's Group, and item two is false. As to the third item, video shows one person throwing some kind of liquid, and possibly one object being thrown, but these occurred **after** the police had fully committed to forcing the barricade into and onto the Plaintiff's Group, and after they had already begun pepper spraying them. These actions were not the cause of the officers' use of force, and cannot form part of the justification for it.

As to item 1, the defendants state: "[Exhibit G at 00:11 – 00:17,] in the foreground shows protestors fighting with police over a barricade." In fact, there are two barricades in the foreground. (The third one back is the one that the police used to cause the plaintiff's injury). At Ex. G 00:00-00:06, a young Asian man in black moves the first barricade, and an officer responds by rapidly lifting and pushing the barricade, off the ground, in the direction of the Asian man's head. (See Video G Images 1 and 2). At that point, the Asian man another person push the barricade back in the direction of the officer (Ex. G 00:07). The two sides push the barricade until putting it down at

8

00:10 in Ex. G. Neither of the two protestors who struggled with the police over this barricade were arrested, although there is no apparent obstacle to the police doing so. (See Video G image 3).

We can speculate why these two protestors weren't arrested – perhaps the officers present knew that it was the police that started the conflict. However, the fact that these protestors were not arrested suggests that the police did not consider these protestors' crime (if indeed they committed one) to be serious. And, although this interaction takes place not far from the Plaintiff's Group (possibly 30 feet away), these two protestors were not part of the Plaintiff's Group. The conduct of the two protestors at this barricade cannot be attributed to the Plaintiff's Group.

The same segment of video shows a clearly unprovoked attack on protestors using a different barricade as a weapon (the one immediately next to, but not in front of, the Plaintiff's Group). (See Video G 00:12 – 00:16 (see Video G images 3-10). A young man dressed in a black leather jacket and jeans can be seen holding his hands out in a gesture of non-violence as a plainclothes officer, and then a uniformed officer, push the barricade into this protestor with the obvious intent of striking him with it. The protestors behind the barricade are not shown doing anything to provoke the attack. The same interaction can be seen in Video K at 00:35 – 00:41.

This action is begun by a plainclothes officer that the defendants misidentify as a protestor. He is a heavy-set man with a stubble beard, wearing a puffy black vest and a grey hoodie. In defendants' image K4 he can be seen forming part of the police line at the barricade in front of the Plaintiff's Group. After he instigates two barricade confrontations (the one just mentioned, and the one involving the Plaintiff's Group), he can be seen going to join the police. (See Video G images 15-17). The defendants describe this plainclothes officer's conduct this way:

> Similarly, the video still at G5 shows a protestor [i.e., the plainclothes officer] who is momentarily obscured by the melee in the foreground, but at 00:11-00:14 appears to be pushing the barricade the plaintiff claims caused his injury into the crowd before reaching over it and detaching it from the next barricade. 00:13-00:17. G5 has the protestor circled for clarity at 00:13. (Lucas Decl. ¶ 9).

This plainclothes officer can indeed be seen in Video G 00:12- 0014 pushing the barricade adjacent to the Plaintiff's Group into the young man with the black leather jacket mentioned above. (See Video G images 3-6). A uniformed police officer takes over and finishes that act of attacking

this protestor. Video G 00:12 – 00:16 (see Video G images 7-10). The plainclothes officer then moves on to the barricade directly in front of the plaintiff's group, and begins pushing it. (Video G 00:17, see Video G image 11). A few seconds later, the plainclothes officer can be seen lifting the barricade in front of the Plaintiff's Group along with the other police officers. (Ex. G 00:20-00:21, Video G Ex. 13).

The plainclothes officer disengages from the barricade struggle he helped to instigate and walks back towards the police line. (See Video G 00:22-00:24, Video G images 15-17). The police continue forcing that barricade into the Plaintiff's Group, adding pepper spray, causing the plaintiff's injuries. (See Video G 00:22-00:28, Video G images 15-20).

Thus, up to the point that the police begin to apply force to the Plaintiff's Group, video G does not show anyone in the Plaintiff's Group doing anything criminal. Assuming that the Asian man who struggled with the police over another barricade 30 feet away committed a crime, this would have counted on the ledge of the first <u>Graham</u> factor potentially justifying the use of force against that young man. Similarly, assuming that the plainclothes officer misidentified as a protestor really was a protestor, he too was not part of the Plaintiff's Group. It is difficult to imagine how this person's conduct of pushing barricades into protestors (including the Plaintiff's Group) would justify the police use of force by continuing what this "protestor" started, and pushing a barricade into the Plaintiff's Group and pepper-spraying them. All while this individual walked away unmolested. Indeed, this sequence of events is nonsensical unless the individual is indeed presumed to be a plainclothes officer. So much for item 1.

Item 2 was the allegation that the Plaintiff's Group instigated the confrontation over the barricade that ultimately caused the plaintiff's injury. Part of the defendants' support for this rests on their contention that the plainclothes officer was really a protestor. As stated above, this is a false assumption, and that individual's actions cannot be attributed to the Plaintiff's Group, which he was not a part of. The defendants' only other support for this contention is a second of video in Exhibit K, which the defendants contend shows that a protestor in the Plaintiff's Group pushed the barricade in front for that group "into police … approximately one minute before it was raised off the ground." (Def. Memo p. 5, citing Video K 02:49, Def. K1). This allegation has the virtue that –

unlike everything so far -- it at least relates directly to the Plaintiff's Group. The young woman referred to was part of the Plaintiff's Group. The problem is that the video does not show that this young woman pushed the barricade "into police." The video doesn't show it very well, but she appears to move one end of the barricade about 6 inches. She acts alone in doing so. The video does not show the barricade striking any officers as a result. The video doesn't show that it came close to striking an officer. A police officer standing in front of her, seemingly about two feet away, shows no reaction from which we could infer that anyone was struck by the barricade. (Ex. K 02:50 – 02:51).

All the video unambiguously shows is that this young woman, acting alone, moved the barricade about six inches. How serious is this "crime," especially when one considers that this is offered by the defendants as justification for applying significant force on the entire Plaintiff's Group of 20 or more people? How serious could this "crime" have been, if the police who witnessed it not only did not arrest this young woman, but did not react in any visible way to the occurrence? Is it reasonable to attribute this "crime," for Graham factor purposes, to the entire Plaintiff's Group when it was a single person, acting alone, who did it?

This leaves item 3, the allegation that the Plaintiff's Group threw objects and/or liquids at the police. Unlike some of the defendants' allegations, this is something that probably happened (in the case of a liquid) and may have happened (in the case of one object). The defendants refer to multiple objects, when there seems to have been no more than one, but the allegation is not wholly invented.

The first problem with the defendants' argument here is one of causation. In order for the police officers' use of force to be justified by these things, they have to precede and cause the use of force. This is not what happened. The police begin to push the barricade into the Plaintiff's Group at 00:20 in Video G. They begin deploying pepper spray at 00:28 in Video G. (see Video G Images 19-20). Defendants' Image 4 shows what may be a liquid being thrown by a protestor at 00:29. The defendants' Ex. J1 allegedly shows someone throwing an object. The metal barricade can already be seen up in the air at that point, in the same image, being pressed into the Plaintiff's Group. The police did not decide to use force because of liquid or an object being thrown. They

11

did not decide what kind of force to use, or whom to use it on, because of it. It is simply not relevant. If the police officers' use of force was not already justified before the liquid and/or object was thrown, then it was an unlawful use of force that the members of the Plaintiff's Group were entitled to resist. If the officers' use of force was already justified when the liquid and/or object was thrown, then this added detail is unnecessary for the opposite reason.

The video does not show what the liquid or the object may have been. There is no evidence presented that anyone was injured or was likely to be injured by these things. There is no basis to determine that throwing the liquid and/or object was – if criminal – anything other than a minor crime. Finally, the video does not provide any reason to attribute responsibility for these acts to the entire group. To the contrary, Defendants' Exhibit K shows the protestors who were closest to the barricade and to the pepper spray holding their hands up in a display of non-violence, even as they take the brunt of the force directed at the Plaintiff's Group as a whole. (See Video K 0-3:50 – 04:01, Video K images 1-4). These members of the Plaintiff's Group, like the plaintiff himself, did absolutely nothing wrong.

## GRAHAM FACTOR 2: WHETHER THE PLAINTIFF'S GROUP POSED AN IMMEDIATE THREAT

The analysis of the second Graham factor is a simple extension of the analysis of the first. The Plaintiff's Group didn't do anything to provoke the use of force. Before the police began to push the barricade against them, they did not present a threat. Members of the Plaintiff's Group that the video shows most clearly made it unmistakably clear, by raising their hands in surrender, that they did not pose a threat. (See Video K 0-3:50 – 04:01, Video K images 1-4). The video shows the police aiming specifically for these non-threatening individuals. Once the police chose this inherently dangerous method of applying force, the police created a danger, but that cannot be attributed to the Plaintiff's Group. The people closest to the barricade were entitled to resist being knocked to the ground and potentially injured (as the plaintiff was). The images from both Video J and Video K show that for the most part, even when the barricade was bearing down on them, the protestors in the Plaintiff's Group did not touch it. (See Video J images 1-3; Video K images 1-4). When they did, as in Video J image 2, the protestors who touched the metal barricade have their

12

arms fully extended, with their hands at a level above their heads. In this position it would be possible only to resist the barricade being brought down further onto the protestors, not to exert force to push it back at the police.

The Asian man who struggled with police over another barricade 30 feet away may have presented some form of threat to the officers he struggled with. But he was not part of the Plaintiff's Group, and use of force on the Plaintiff's Group would in no way address the threat, if any, presented by this Asian man. Similarly, assuming that the plainclothes officer misidentified as a protestor really was a protestor, and that he posed a threat to the police, use of force on the Plaintiff's Group would in no way address this threat – and that individual walked among police officers unmolested.

### GRAHAM FACTOR 3: WHETHER THE PLAINTIFF'S GROUP WAS RESISTING OR FLEEING ARREST

The police were not trying to arrest any member of he Plaintiff's Group when they began using the barricade and pepper spray. The video does not reflect that the police arrested any member of the group even in the aftermath. The use of a metal barricade – as the complaint pleads – is a dangerous and therefore unreasonable way to attempt to move or disperse a crowd (especially without any dispersal order). There is no apparent professional purpose to the police action.

### SUMMING UP THE GRAHAM FACTORS APPLIED TO THE PLAINTIFF'S GROUP

The Graham analysis is the same for this group as it was for Robert Pluma: the group was not committing a crime, did not pose a threat, and made no resistance except to protect themselves from unlawful force already being applied to them. Under the Graham factors, the police officers' use of force was utterly unreasonable.

### C.    The Graham Factors Cannot Rationally be Applied to the Park as a Whole

The majority of the video that the defendants point to does not depict the Plaintiff's Group – it depicts allegedly relevant events that occurred somewhere else within the one acre or so of space occupied by the park and its surroundings, and within 20 minutes before, and some unknown amount of time after, the incident that injured the plaintiff. These other incidents are relevant only

if the concept of collective guilt applies under Graham, and only if it can be stretched so far as to encompass everyone in the park without distinguishing among individuals, or even among groups of individuals. If collective guilt stretches so far, then this means that at the same moment that collective guilt allegedly justified the police using the barricade and pepper spray on the Plaintiff's Group, then at the same moment the police would have been justified in using the same force on every single person in the park.

Still, the case law is clear that the Graham factors are the only standard by which to measure the use of force. Even in a thought experiment which assumes the propriety of collective guilt and collective punishment, the Graham factors are mandatory. *See Brown*, 2015 U.S. App. LEXIS 14517, at 19-22. Analyzing Graham factor one would require determining whether the entire park was guilty of a crime, and what crime. Factor two would require determining what threat the entire park collectively presented. For both factor one and two, the Court would have to decide whether criminal activity or threatening behavior committed by the park -- but out of sight and sound of the officers employing the force, and unknown to them – should be counted in analyzing those factors. For factor three, since only four people in the park were arrested at the relevant time, the Court would have to decide whether these few arrests count at all.

There is a great deal of exaggeration and speculation in the manner in which the defendants describe the various incidents throughout the park – which involved neither the plaintiff nor the Plaintiff's Group – but which the defendants allege create sufficient collective guilt to justify the use of force on the plaintiff. The defendants effectively paint picture of a situation in which an order to disperse would have been justified. However, this case is not about an order to disperse. It is about a decision to use significant force – force highly likely to cause injury.

The protestors in the park had not been told to leave. The majority of them had no interaction with the police other than verbal interaction. While it's not very nice to call the police pigs, Nazis or monkeys, it's not illegal. Many people, possibly the majority of the people in the park, had some form of camera or video device. Filming the police is not illegal. A minority of those in the park were interfering with the barricades, primarily by separating them or moving them into the middle of the park. A smaller minority were doing other things that may have been illegal.

The defendants did not seek out those individuals for arrest. The force used was not applied to those individuals. The force was applied to the plaintiff, and to the Plaintiff's Group, who the video conclusively shows did not merit the dangerous and harmful kind of force applied to them.

The baselessness or irrelevance of the remaining allegations of the defendants, to the extend not addressed herein in detail, are sufficiently clear from the discussion above.

## VI. Qualified Immunity

"In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Weyant v. Okst*, 101 F.3d 845, 857 (1996). Qualified immunity is a mixed question of law and fact, and disputed factual questions must be decided by the factfinder. *See Zellner*, 494 F.3d at 368.

The determination of whether the defendant violated the plaintiffs 'clearly established' constitutional rights turns on the law as it existed at the time of the defendant's alleged wrong. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 129 (2d Cir. 2004); *Hope v. Pelzer*, 536 U.S. 730, 740-41 (2002). In practice, Courts in the Second Circuit use the Graham factors both to determine the existence of a Constitutional violation and to test the defendants' claim to entitlement to qualified immunity. *See, e.g., Williams v. Wood*, 375 Fed. Appx. 98, 101 (2d Cir. N.Y. 2010) (citing Graham as "clearly established law" setting the qualified immunity standard); *Amnesty Am.*, 361 F.3d at 123 (same). "In excessive force cases, the Fourth Amendment analysis and the qualified immunity analysis often 'converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful.'" *O'Hara v. McAvoy*, 2013 U.S. Dist. LEXIS 119417 (E.D.N.Y. Aug. 22, 2013) (quoting *Cowan v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003)).

The Second Circuit has also warned:

> It has become commonplace for defendants in excessive force cases to support their claims to qualified immunity by pointing to the absence of prior case law concerning the precise weapon, method, or technology employed by the police. As the Supreme Court has made clear, however, it is not necessary to find a "case directly on point" in order to show that the law governing a plaintiff's claim is clearly established. Some measure of abstraction and common sense is required

with respect to police methods and weapons in light of rapid innovation in hardware and tactics. *Terebesi v. Torreso*, 764 F.3d 217, 237 (2d Cir. Conn. 2014). *See also Papineau v. Parmley*, 465 F.3d 46, 57 (2d Cir. 2006).

"Given the fact-specific nature of the inquiry," granting judgment as a matter of law against a plaintiff on an excessive force claim "is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty Am., 361 F.3d at 123 (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)). Thus, in the Second Circuit's recent opinion in Brown, the court said: "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown*, 2015 U.S. App. LEXIS 14517, at 23. Of course, where facts are disputed, judgment as a matter of law cannot be granted. *See Simcoe v. Gray*, 577 Fed. Appx. 38, 41 (2d Cir. N.Y. 2014) ("judgment should not have been granted based on qualified immunity where, as here, there are genuine disputes of material fact.")

The Second Circuit's decision in Brown makes it obvious that in this case, where there the interpretation of video is disputed, and where the Graham factor analysis provides little support for the defendants' use of force, judgment as a matter of law cannot be granted.

## VII.     Assault and Battery

A claim for excessive force under the Fourth Amendment, and a state law claim for assault, are not identical. *See O'Hara v. City of New York*, 570 Fed. Appx. 21, 24 (2d Cir. N.Y. 2014) (jury's finding for plaintiff on claim of excessive force and denial of assault claim not inconsistent). To prevail on a New York state civil battery claim against a police officer, the plaintiff must prove "that the officer made bodily contact, that the contact was offensive, that the officer intended to make the contact, and that the officer's conduct was not reasonable within the meaning of New York Penal Law 35.30(1)." *Jamison v. Metz,* 541 Fed. Appx. 15, 20 (2d Cir. 2013) (citing *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005) and *Laurie Marie M. v. Jeffrey T. M.*, 159 A.D.2d 52 (2d Dep't 1990)) (quotations omitted).

New York Penal Law 35.30(1) provides, in relevant part:

> A police officer or a peace officer, in the course of effecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a

person whom he or she reasonably believes to have committed an offense, may use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest, or to prevent the escape from custody, or in self-defense or to defend a third person from what he or she reasonably believes to be the use or imminent use of physical force

Even if they were identical, the defendants have not demonstrated that the force used was justified. Accordingly, these claims cannot be dismissed.

## VIII. Negligence Pled in the Alternative

The Second Circuit holds that, under federal law controlling pleading in federal courts:

> Rule 8(e)(2) of the Federal Rules of Civil Procedure permits plaintiffs to "plead two or more statements of a claim, even within the same count, regardless of consistency. The flexibility afforded by Rule 8(e)(2) is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims. *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. N.Y. 1999) (citing *Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. N.Y. 1994))

Even where the allegations are not specifically pleaded as "in the alternative," the Second Circuit has ruled that: "Rule 8(e)(2) offers sufficient latitude to construe separate allegations in a complaint as alternative theories." *Id.* (citing *MacFarlane v. Grasso*, 696 F.2d 217, 224-25 (2d Cir. 1982) and *Daytop*, 42 F.3d at 94. The only precedential authority provided by the defendants does not hold what the defendants say it does, and does not address the relevant issue.[3] The (non-precedential) authority presented by the defendants provides no rationale for why there might be (or should be) a rule of pleading that – alone among causes of action -- battery and negligence may not be pled in the alternative. Indeed, the non-precedential federal cases appear to have misunderstood New York State law. In New York State courts, the rule is this:

---

[3]     The Second Circuit's opinion in *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. N.Y. 1994) simply says that there is no such thing as a cause of action for 'negligent false arrest' or 'negligent prosecution.' This is undisputable, but also irrelevant, because Robert Pluma was neither arrested nor prosecuted. In the defendants brief, the defendants cut short the quote from the Second Circuit's opinion, removing that part of the sentence that revealed what the court was talking about (restored here, emphasis added): "Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care **in effecting an arrest or initiating a prosecution.**" The other Second Circuit case, O'Neill v. Krzeminski, 839 F.2d 9, 11 fn. 1 (2d Cir. Conn. 1988) simply says that police negligence does not violate the Constitution, and therefore cannot be the basis for a federal civil rights claim.

While a party is permitted to plead inconsistent theories of recovery (CPLR 3014), it must elect among inconsistent positions upon seeking expedited disposition. Although this rule does not require a litigant to elect remedies when defending a motion for summary judgment, the rule does require the litigant to make that election **when it seeks summary judgment**. *On the Level Enters., Inc. v 49 E. Houston LLC*, 104 A.D.3d 500, 501 (N.Y. App. Div. 1st Dep't 2013) (emphasis added) (citing *Unisys Corp. v Hercules Inc.*, 224 AD2d 365, 367 (1st Dep't 1996) and *Wilmoth v. Sandor*, 259 AD2d 252, 254 (1st Dep't 1999)).[4]

This is the rule being applied in Averett v. County of Broome, 16 Misc. 3d 1120(A), 1120A (N.Y. Sup. Ct. 2007) (in the court's reference to "inconsistent recovery") where the court held that the non-movant plaintiff could proceed with both intentional and negligence claims against the police defendants:

> [T]he County Defendants contend that the complaint contains inconsistent allegations pertaining to Deputy Bennett's actions as both intentional and negligent. Plaintiff concedes that some of her claims (§ 1983 and Fourth Amendment claims) involve intentional actions, rather than negligent acts, but argues that pleading in the alternative is permitted. The court agrees. The CPLR permits alternative pleading (CPLR § 3014), even though a party is not permitted inconsistent recovery.

*Accord Xiaoning He v City of New York*, 2015 N.Y. Misc. LEXIS 778 (N.Y. Sup. Ct. Mar. 19, 2015) (holding that while a plaintiff may plead negligence against police officers in the alternative, the facts pled failed to state a cause of action).

If the plaintiff does **not** move for summary judgment, "[o]nly at trial is the plaintiff required to make an election at a time within the discretion of the Trial Judge." *Wilmoth v. Sandor*, 259 A.D.2d 252, 254 (N.Y. App. Div. 1st Dep't 1999) (ruling plaintiff could maintain inconsistent contract and quasi-contract claims) (quotations and citations omitted). *See also Wertzberger v. City of New York*, 254 A.D.2d 352 (N.Y. App. Div. 2d Dep't 1998) (at **trial**, the court declined to instruct the jury on negligence, because the intentional nature of the police officers' acts had been "established").

## IX.    Statute of Limitations & Failure to Intervene

---

[4]     *See also Rich v West 31st St. Assoc., LLC*, 92 A.D.3d 433, 434-435 (N.Y. App. Div. 1st Dep't 2012) (applying principle to scaffolding law claims) ("While a party is permitted to plead inconsistent theories of recovery (CPLR 3014), a litigant must elect among inconsistent positions upon seeking expedited disposition."); *Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & MacRae*, 243 A.D.2d 168, 177 (N.Y. App. Div. 1st Dep't 1998) (same, applied to legal malpractice claims).

The only individual defendants to appear on this motion are officers Vega, Soreco and O'Leary. The defendants admit that, in the related matter <u>Pluma v. Soreco</u>, 14-cv-9969, these defendants were timely sued and timely served. (Def. Memo fn. 3). Given this, the argument that the claims in this litigation do not relate back makes little sense. If the defendants were to win that argument, it would simply place them in default in the other case. The other defendants have not appeared before the Court on this motion, and Mr. Lucas has made clear he does not represent them. (Def. Memo fn 1). Any motion on behalf of these other defendants cannot be entertained. For the same reason, the arguments concerning failure to intervene, must also be set aside as not properly before the Court.

## X. Substantive 14th Amendment Claim

It is the law of the case that there is no 14th Amendment claim. In this Court's March 31, 2015 decision, the Court held that the plaintiff was "seized" and stated a valid Fourth Amendment claim. The Court explained that, because of this, it was unnecessary to consider the facts stated in the pleading through the lens of the Fourteenth Amendment:

> Because the Court finds that the Complaint sufficiently alleges a seizure cognizable under the Fourth Amendment, it need not consider Plaintiff's Fourteenth Amendment substantive due process claim. Excessive force claims may only be considered under a single constitutional provision, depending on the context of the alleged violation. Where the claim arises in the context of a seizure, it is governed by the Fourth Amendment alone. Had the Court determined that Plaintiff failed to allege a seizure, however, then Plaintiff's excessive force claim would be analyzed as a substantive due process claim under the Fourteenth Amendment, which Plaintiff raised in his first cause of action but which Defendant did not specifically challenge in his motion. *Pluma*, 2015 U.S. Dist. LEXIS 48134, at 15-16.

The 14th Amendment remains a part of the pleading because the 4th Amendment is applicable to the individual States by means of the 14th Amendment. While it may not be strictly necessary for the complaint to reference the 14th Amendment, it cannot be said to be improper to trace the source of this federal court's power over the subject matter of the action back to its source.[5]

---

[5]     Were the Court to make a different determination at a later stage of the case that the plaintiff was not "seized," then the plaintiff might well seek to establish that relief could still be had under the substantive clauses of the 14th Amendment. In essence, then, the defendants are asking

## XI.    The Motion to Strike

"Rule 12(f) authorizes a court ... to strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.  Motions to strike are not favored [and] the movant must demonstrate ... that to permit the allegations to stand would result in prejudice to the movant.'" *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 642 (S.D.N.Y. 2001) (Preska, J.) (quotations omittted).  The defendants have not shown any prejudice from the footnote to the complaint, and their request to strike the entire pleading is ridiculous.


Dated:  New York, N.Y.
            September 3, 2015

David A. Thompson [3991]
Stecklow & Thompson
Attorneys for Plaintiff
217 Centre Street, 6th Floor
New York, N.Y. 10013
Phone:  (212) 566-8000
Fax:     (212) 202-4952
dave@sctlaw.nyc

---

the Court to issue an advisory opinion concerning whether or not a future amendment to the complaint could possibly state a substantive 14th Amendment claim. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. N.Y. 2007).